UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LARRY L. ROGERS, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 3:24-CV-577 JD |

**OPINION AND ORDER**

Plaintiff Larry Rogers applied for supplemental security income under Title XVI of the Social Security Act, alleging that he became disabled in August 2018. His claim was rejected, leading to a review by an Administrative Law Judge ("ALJ"), who concluded that Mr. Rogers was not disabled. The Appeals Council later denied his request for review, and Mr. Rogers now seeks judicial review in this Court. For the reasons below, the Court will affirm the Agency's decision.

**A. Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th

Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**B. Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in the national economy at step five. 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**C. The ALJ's Decision**

Mr. Rogers filed a Title XVI application for supplemental security income benefits, alleging disability beginning in August 2018. His claim was denied initially and upon reconsideration, leading to a hearing before an ALJ on November 30, 2022.

As summarized by the ALJ, Mr. Rogers testified at the hearing that he received special education while in school. He described his typical day as taking medication, eating, watching TV, and napping, with poor sleep because of nightmares. He manages basic self-care but lacks motivation for regular hygiene and needs reminders for personal and household tasks. He uses public transportation and has limited financial skills, having only ever paid a cell phone bill. Socially, he interacts mainly with family. He reported difficulty with memory, concentration, task completion, understanding, and authority figures. (R. at 23.)

On May 24, 2023, the ALJ issued a decision finding that Mr. Rogers was not disabled.[1] (R. at 27.) The ALJ determined that Mr. Rogers suffered from the following severe impairments: "major depressive disorder; bipolar disorder with anxious distress and with psychotic features; post-traumatic stress disorder (PTSD); marijuana use disorder; methamphetamine abuse, in remission." (R. at 21.) Next, the ALJ determined that Mr. Rogers "does not have an impairment

---

[1] The ALJ found that, among other things, Mr. Rogers had impairments of marijuana use disorder and methamphetamine use, in remission. The ALJ then determined that "including the claimant's substance use, the severity of his impairments met [a Listing]." (R. at 20.) Ultimately, however, she found that his substance use was a material contributing factor to his disability, and that he would not be disabled if he stopped substance abuse. For the purposes of this order, the Court need not address Mr. Rogers's substance use, as the issues raised by this appeal must be evaluated in the context of assuming that he would stop using illicit substances. *See* 20 C.F.R. § 416.935(b) ("[W]e will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling. . . .").

4

or impairments or combination of impairments that meets or medically equals the severity of [a Listing]." (R. at 22.)

In the ALJ's residual functional capacity ("RFC") assessment,[2] she determined that Mr. Rogers could

> perform a full range of work at all exertional levels but with the following non-exertional limitations: he can understand, remember, and sustain the concentration necessary to carry-out simple tasks; he can relate on a superficial ongoing basis with supervisors and coworkers, with "superficial" meaning that he can engage in simple exchanges of information or instructions, without detailed ongoing interactions with others; he should have no interactions with the public; and he can adapt to changes and appropriately manage the stresses involved in simple work.

(R. at 15.)

Among other things, the ALJ based her RFC determination on the narrative opinion of the state agency psychological consultant Dr. Joelle Larsen, which she provided in the Disability Determination Explanation ("DDE") form at the reconsideration level.[3] Dr. Larsen's narrative states:

> The evidence suggests that . . . claimant can understand, remember, and carry-out unskilled tasks. The claimant can relate on a superficial basis on an ongoing basis with co-workers and supervisors. The claimant can attend to task for sufficient periods of time to complete tasks. The claimant can manage the stresses involved with work.

(R. at 96.)

---

[2] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

[3] Dr. Larsen was the state agency psychological consultant who reviewed Mr. Rogers's claims for disability after they were denied upon initial review by another state agency psychological consultant, Dr. Donna Unversaw. Their findings are nearly identical, other than Dr. Unversaw opined that the claimant had mild limitations in his ability to adapt or manage oneself, whereas Dr. Larsen opined that Mr. Rogers would have moderate limitations in this area. The ALJ found their findings persuasive, and to the extent that they differed in the area of Mr. Rogers's ability to adapt or manage himself, the ALJ adopted Dr. Larsen's more restrictive opinion. (R. at 25.) For the sake of clarity, the Court will refer in this order only to Dr. Larsen's opinion.

5

The ALJ posed a hypothetical question to the vocational expert ("VE") based on her RFC findings. The VE testified that such an individual could perform Mr. Rogers's past relevant work as garment sorter. The VE also testified that there would be other jobs available to the hypothetical person with Mr. Rogers's RFC: laundry press operator, router, and inspector and hand packager. (R. at 70–72.) The VE, however, testified that there would be no jobs for the hypothetical person if that "individual would be off task more than 15% of the workday. (R. at 73.) The ALJ accepted the VE's testimony, ultimately finding that Mr. Rogers was not disabled. According to the ALJ, while Mr. Rogers's mental impairments result in some functional limitations, they are not as severe as alleged. (R. at 23.)

**D. Discussion**

Mr. Rogers seeks remand on two main grounds.[4] First, he argues that the ALJ erred by failing to incorporate into the RFC the mental functioning limitations identified by the state agency psychological consultants in the check-box section of the DDE form. Second, Mr. Rogers submits that the ALJ redefined without an explanation the state agency psychological consultant's conclusion that his interactions with coworkers and supervisors could be only "superficial."

**(1)** *Mental Residual Functional Capacity Assessment*

---

[4] Mr. Rogers makes no other substantive arguments, thus waiving any other challenges, and it is not the Court's place to make arguments for the parties. *See Tammie D. D. v. Comm'r of Soc. Sec.*, No. 17-cv-01003-2018, U.S. Dist. LEXIS 119171, at *21 (S.D. Ill. July 17, 2018) ("[I]t is certainly not the Court's place to make or develop arguments on behalf of a party.") (citing *Puffer v. Allstate Ins.*, 675 F.3d 709, 718 (7th Cir. 2012) ("underdeveloped, conclusory, or unsupported" arguments are waived)).

"The RFC finding is central to the outcome of a Social Security case." *Holiday v. O'Malley*, No. 2:23-CV-302, 2024 WL 2860088, at *3 (N.D. Ind. June 5, 2024). When assessing mental RFC, state agency psychological consultants consider "claimant's impairments in the four broad areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself." *See Timothy H. v. Kijakazi*, No. 20 C 581, 2022 WL 4079433, at *3 (N.D. Ill. Sept. 6, 2022). As part of the assessment, they use "a form called Mental Residual Functional Capacity Assessment, which has two relevant components: (1) a checkbox-type worksheet for the psychologist to assess the claimant's limitations and (2) a narrative section that contains a written assessment of the claimant's RFC." *Timothy O. v. Kijakazi*, 2023 U.S. Dist. LEXIS 243488, *6 (S.D. Ind. April 21, 2023) (citing Program Operations Manual System DI 25020.0010(B)(1) and *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019). "ALJs must consider—but are not required to adopt—the findings of state-agency psychologists." *Id*. (citing 20 C.F.R. § 404.1513). When evaluating these opinions, "[t]he ALJ must consider whether the consultants' narrative RFC assessment 'adequately encapsulates and translates' the checklist." *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). In addition, "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Varga*, 794 F.3d at 813. "If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence, or pace, that limitation must be accounted for in the hypothetical question posed to the VE." *Nichol L. A. v. Comm'r of Soc. Sec.*, No. 21-CV-480, 2022 WL 3348774, at *14 (S.D. Ill. Aug. 12, 2022) (*O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010)). It's not enough for the ALJ to rely on the narrative RFC recommendations, unless the narrative accounts

7

for all the limitations that an expert has identified "including specific questions raised in check-box of standardized forms." *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019); *see also Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019) ("It is well-established that 'both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record.' However, an ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination.") (citations omitted)).

As relevant to this appeal, Dr. Larsen found in the check-box portion of the DDE form that Mr. Rogers has sustained concentration and persistence limitations, rating him as moderately limited in his ability to "maintain attention and concentration for extended periods." (R. at 94.) Likewise, Dr. Larsen determined that Mr. Rogers has social interaction limitations, stating that he was moderately limited in his "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (R. at 94.) Finally, Dr. Larsen indicated that Mr. Rogers has adaptation limitations, being moderately limited in the "ability to respond appropriately to changes in the work setting." (R. at 95.) Other than these three limitations—and excluding the moderate limitation in "the ability to carry out detailed instructions," which Mr. Rogers does not bring up nor otherwise address in his briefs—Dr. Larsen found no other significant limitations in the check-box portion of the mental RFC assessment.

In the narrative portion of the assessment, Dr. Larsen summarized her check-box findings:

> The evidence suggests that . . . claimant can understand, remember, and carry-out unskilled tasks. The claimant can relate on a superficial basis on an ongoing basis with co-workers and supervisors. The claimant can attend to task for sufficient periods of time to complete tasks. The claimant can manage the stresses involved with work.

(R. at 96.)

In her RFC discussion, the ALJ found Dr. Larsen's opinion to be persuasive because it is "consistent with and supported by the medical and other evidence of record." (R. at 25.) In fact, the ALJ fashioned the RFC based on Dr. Larsen's narrative, essentially including all his limitations—and as discussed below—even adding additional restrictions:

> . . . he can understand, remember, and sustain the concentration necessary to carry-out simple tasks; he can relate on a superficial ongoing basis with supervisors and coworkers, with "superficial" meaning that he can engage in simple exchanges of information or instructions, without detailed ongoing interactions with others; he should have no interactions with the public; and he can adapt to changes and appropriately manage the stresses involved in simple work.

(R. at 15.)

In his briefs, Mr. Rogers acknowledges that an ALJ may rely on the narrative RFC discussion, provided it adequately reflects the limitations identified in the check-box section. (See Pl.'s Br., DE 14 at 11 (discussing *DeCamp v. Berryhill*, 916 F.3d 671 (7th Cir. 2019).) However, while he argues that the ALJ failed to account for Dr. Larsen's check-box findings, he does not explain why he believes those limitations are not captured in the narrative RFC. He makes no effort to compare, or contrast, the check-box limitations with the narrative discussion. At best, he offers only conclusory accusations against the ALJ, asserting that the RFC does not encompass the check box limitations. He merely assumes that a conflict exists, without articulating what that conflict is. (See, e.g., Pl.'s Br., DE 14 at 9 ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); id. at 12 ("The so-called 'checkbox' and narrative portions of [Dr. Larsen's] assessments implicated far more restrictive and specific limitations than the ALJ assessed.").) In a sense, Mr. Rogers incorrectly assumes that a moderate limitation carries the same functional impact in every case.

9

To be precise, Mr. Rogers's contentions focus on a single check-box limitation: "the ability to maintain attention and concentration for extended periods." Aside from a brief mention of the moderate limitation in the ability "to get along with coworkers or peers without distracting them or exhibiting behavioral extremes"(*see* Pl.'s Br., DE 14 at 13), he offers no argument of how the remaining two limitations relate to the RFC. Although Mr. Rogers bears the burden at the first four steps of the sequential process, he effectively asks the Court to construct arguments on his behalf. Importantly, Mr. Rogers identifies no additional functional restrictions that he believes would more accurately translate Dr. Larsen's check-box ratings. *Cf. Bolin v. Saul*, No. 20-CV-348-JDP, 2021 WL 567899, at *6 (W.D. Wis. Feb. 16, 2021) (finding that the plaintiff forfeited an argument based on an alleged failure to incorporate implied restrictions where he failed to specify what additional limitations should have been included in the narrative). Additionally, Mr. Rogers has not cited any case with facts similar to his own in which a court held that remand was required due to an inconsistency between the narrative discussion and check-box findings. Because Mr. Rogers fails to articulate how the narrative RFC omits the check-box limitations—or how the RFC is inconsistent with them—his argument is waived. *See Puffer*, 675 F.3d at 718 ("underdeveloped, conclusory, or unsupported" arguments are waived); *see also Bolin*, No. 20-CV-348-JDP, 2021 WL 567899, at *6 ("But other than invoking the *O'Connor-Spinner* line of cases, [the plaintiff] offers no reason why the consultants' narrative is inadequate. And [the plaintiff] identifies no additional restrictions that would better translate the consultants' ratings. [The plaintiff] has forfeited any further argument based on an alleged failure of the ALJ or the consultants to incorporate restrictions implied by the consultants' ratings but not included in the narrative.").

But even if Mr. Rogers had not waived his argument, he still could not prevail. Because the ALJ relied on the narrative portion of the mental RFC, the key question is whether that narrative adequately encapsulates the check-box limitations and, in turn, whether the RFC is consistent with the narrative. Dr. Larsen noted in the check-box section of the form that Mr. Rogers had moderate limitations in his ability to "maintain attention and concentration for extended periods"; his ability to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes"; and to "respond appropriately to changes in a work setting." (R. at 95–96.) Each of these limitations is translated in the narrative. The limitation concerning the sustained attention and concentration is encapsulated in Dr. Larsen stating that "[t]he claimant can attend to task for sufficient periods of time to complete tasks." In turn, the limitation for social interactions is translated as "[t]he claimant can relate on a superficial basis on an ongoing basis with co-workers and supervisors." Finally, the limitation for workplace adaptability is adequately translated as "[t]he claimant can manage the stresses involved with work." (R. at 96.) This is all the more true given that Dr. Larsen found no significant limitations in any of the following functional areas:

- The ability to remember locations and work-like procedures;
- The ability to understand and remember very short and simple instructions;
- The ability to carry out very short and simple instructions;
- The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- The ability to sustain an ordinary routine without special supervision;
- The ability to work in coordination with or in proximity to others without being distracted by them;
- The ability to make simple work-related decisions;
- The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- The ability to interact appropriately with the general public;
- The ability to ask simple questions or request assistance;
- The ability to accept instructions and respond appropriately to criticism from supervisors;

11

- The ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness;
- The ability to be aware of normal hazards and take appropriate precautions;
- The ability to travel in unfamiliar places or use public transportation; [and]
- The ability to set realistic goals or make plans independently of others.

(R. at 94–95.)

In assessing whether Dr. Larsen adequately translated the check-box limitation concerning sustained attention and concentration, the Court notes in particular that Dr. Larsen found Mr. Rogers not significantly limited in his ability "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," as well as in his ability "to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." These findings reinforce the adequacy of Dr. Larsen's narrative statement—that "[t]he claimant can attend to task for sufficient periods of time to complete tasks"—because they directly address and resolve any temporal concerns about what constitutes a "sufficient period" in the work context. This is different from *Monday v. Comm'r of Soc. Sec.*, No. 4:23-CV-96 JD, 2025 WL 865146, at *6 (N.D. Ind. Mar. 20, 2025), a case cited by Mr. Rogers, where this Court found a narrative RFC inadequate precisely because the state agency consultants had identified moderate limitations in the claimant's ability to complete a normal workday and workweek and to maintain a consistent pace—yet these limitations were omitted from the narrative explanation. No such problem exists here: Dr. Larsen found no such limitations, and thus his narrative properly encapsulates the functional impact of the only moderate check-box limitation identified. In light of this, the Court cannot say that Dr. Larsen's narrative fails to adequately reflect the check-box findings.

This, in turn, brings up the next issue: whether the ALJ's RFC is consistent with Dr. Larsen's narrative. In the narrative, Dr. Larsen stated that Mr. Rogers "can relate on a superficial basis on an ongoing basis with co-workers and supervisors." (R. at 96.) In the RFC, the ALJ adopted Dr. Larsen's characterization but also provided a specific definition of "superficial": "he can relate on a superficial ongoing basis with supervisors and coworkers, with 'superficial' meaning that he can engage in simple exchanges of information or instructions, without detailed ongoing interactions with others." (R. at 23.) Mr. Rogers contends that this definition constitutes an outright rejection of Dr. Larsen's opinion. In particular, he argues that "engaging in simple exchanges of information or instructions" is "antithetical to the opined limitation of only ***superficial and not substantive interactions***," which he asserts is the intended meaning of relating "on a superficial basis . . . with coworkers and supervisors." (Pl.'s Br., DE 14 at 13 (emphasis in the original.) To support this, Mr. Rogers relies solely on dictionary definitions of "superficial" from Merriam-Webster, which include "presenting only an appearance without substance or significance," "concerned only with the obvious or apparent," and "of, relating to, or located near a surface." (*Id*. (citing https://www.merriam-webster.com/dictionary/superficial).) However, he cites no case law or other legal authority to substantiate his claim.

By explaining "superficial," the ALJ did not reject Dr. Larsen's opinion. Mr. Rogers is under the impression that allowing "simple exchanges of information or instructions" moves the interactions from superficial to substantive. But a simple exchange of information or instructions, especially where, as here, it is "without detailed ongoing interactions with others," is not inconsistent with relating superficially with coworkers and supervisors. Such an exchange in no way suggests that an action is no longer "concerned with only the obvious or apparent" or that it becomes "substantive or significant," that is to say, more than "superficial." Relating on a

superficial basis with coworkers and supervisors on the one hand, and exchanging simple information or instructions on the other, does not strike the Court as antithetical, contrary to Mr. Rogers's argument. What's more, the additional qualification that the exchange must be "without detailed ongoing interactions with others" further limits Dr. Larsen's opinion as it excludes repetitive dealings. And "an RFC that is more limiting than an agency doctor's analysis illustrates that the ALJ gave 'reasoned consideration' to the evidence." *Langley v. O'Malley*, No. 22-3008, 2024 WL 3649021, at *4 (7th Cir. Aug. 5, 2024). At worst, any departure from the original meaning is so minimal that it cannot be said to deviate from the substantial evidence requirement. *See id.* ("In constructing the RFC, the ALJ only minimally departed from the doctors' opinion and, as explained above, this deviation was supported by substantial evidence in the record. This is all we require."); *see also Recha v. Saul*, 843 F. App'x 1, 4 (7th Cir. 2021) ("The problem for [the plaintiff] is that our case law has clarified that an ALJ has some latitude with the exact wording of an RFC as long as it conveys in some way the restrictions necessary to address a claimant's limitations. While we require 'that the ALJ must account for the "totality of a claimant's limitations" in determining the proper RFC,' we have 'decline[d] to provide a glossary of adjectives for use in RFC determinations.'" (quoting *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020)). Most importantly, the ALJ's definition of "superficial" aligns with Dr. Larsen's check-box findings of no significant limitations in Mr. Rogers's "ability to ask simple questions or request assistance" or his "ability to accept instructions and respond appropriately to criticism from supervisors." (R. at 95.) In other words, the added definition is grounded in substantial evidence and is not contrary to Dr. Larsen's narrative, which summarizes the check-box assessment. "And if substantial evidence supports the disability determination, we must affirm the decision even if reasonable minds could differ about whether the claimant is

disabled." *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025); *see also Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) ("We must affirm so long as the ALJ's decision finds support in "substantial evidence." No matter how that standard may read or sound, the Supreme Court has emphasized just how deferential it is as a legal matter: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" when it comes to administrative decisions. *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S.Ct. 1148, 203 L.Ed.2d 504 (2019). Put most simply, we will reverse an ALJ's decision only if the record "compels a contrary result." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (internal quotation marks omitted) (citation omitted).").

### E. Conclusion

For these reasons, the Court AFFIRMS the Agency's decision. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: September 8, 2025

/s/ JON E. DEGUILIO
Judge
United States District Court